UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ELLIOTT D. KIRKLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:16-cv-00412-JMS-MJD |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Elliott Kirkling applied for disability insurance benefits under the Social Security Act ("SSA") on December 4, 2012. [Filing No. 14-5 at 2.] Mr. Kirkling also applied for supplemental security income on November 26, 2012. [Filing No. 14-5 at 4.] Mr. Kirkling alleged a disability onset date of May 15, 2011. [Filing No. 14-5 at 2.] His applications were denied initially on February 4, 2013, [Filing No. 14-4 at 6; Filing No. 14-4 at 15], and upon reconsideration on June 13, 2013, [Filing No. 14-4 at 25; Filing No. 14-4 at 32]. Administrative Law Judge ("ALJ") Christopher Helms held a hearing on April 8, 2015, [Filing No. 14-2 at 33], and issued a decision on May 15, 2015, concluding that Mr. Kirkling was not disabled as defined by the SSA, [Filing No. 14-2 at 10-25]. The Appeals Council denied review on August 23, 2016, rendering the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 14-2 at 2.] Mr. Kirkling then filed this civil action under 42 U.S.C. § 405(g), asking the Court to review the denial of benefits. [Filing No. 1.]

# I.

## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Mr. Kirkling was born in 1980 and has at least a high school education with previous work experience as a restaurant worker and packing line worker. [Filing No. 14-2 at 24.][1] Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4), the ALJ issued an opinion on May 15, 2015, determining that Mr. Kirkling was not entitled to receive disability benefits or supplemental security income. [Filing No. 14-2 at 10-26.] The ALJ found as follows:

- At Step One, the ALJ found that Mr. Kirkling had not engaged in substantial gainful activity[2] since the alleged onset date. [Filing No. 14-2 at 15.]

- At Step Two, the ALJ found Mr. Kirkling suffered from the following severe impairments: "status post 2003 car accident resulting in a major dysfunction of the joints – bilateral knees, legs and left foot droop with residual effects from a traumatic brain injury." [Filing No. 14-2 at 15.]

- At Step Three, the ALJ found that Mr. Kirkling did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 14-2 at 17.]

- After Step Three but before Step Four, the ALJ found that Mr. Kirkling had the RFC to perform "sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except the

---

[1] Both parties provided a detailed description of Mr. Kirkling's medical history and treatment in their briefs. [Filing No. 16; Filing No. 21.] Because those facts implicate sensitive and otherwise confidential medical information concerning Mr. Kirkling, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for a total of two hours in an eight-hour workday and sit for six hours in an eight-hour workday; sit for 10 minutes at one time and stand for 30 minutes at one time; never climb ladders, ropes, scaffolds, kneel or crawl; occasionally climb ramps and stairs; occasionally balance; occasionally stoop and crouch; avoid concentrated exposure to extreme cold and vibration and avoid even moderate exposure to wetness, moving mechanical parts and unprotected heights. The claimant is also limited to simple, routine and repetitive tasks; occasional interaction with supervisors, coworkers and the public and the claimant is limited to tolerating few changes in a routine work setting (i.e. essentially doing the same job from day to day)." [Filing No. 14-2 at 17-18.]

- At Step Four, the ALJ found that Mr. Kirkling is unable to perform any past relevant work. [Filing No. 14-2 at 24.]

- At Step Five, the ALJ found that considering Mr. Kirkling's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Kirkling can perform, including final assembler, inspector checker/ weight tester, and packer/bander hand. [Filing No. 14-2 at 25.]

Mr. Kirkling asked the Appeals Council to review the ALJ's decision, but that request was denied on August 23, 2016, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 14-2 at 2.] Mr. Kirkling now seeks judicial review under 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1.]

### III.
### DISCUSSION

On appeal, Mr. Kirkling challenges the ALJ's decision on the following grounds: (1) the ALJ did not consider evidence with respect to his upper extremity limitations, [Filing No. 16 at

10]; and (2) the ALJ's credibility determination is not supported by substantial evidence, [Filing No. 16 at 12].  The Court will address the issues accordingly.

### A.  Upper Extremities

Mr. Kirkling challenges the ALJ's determination on his upper extremities.  [Filing No. 16 at 10.]  He cites four pieces of evidence in support of his argument that his upper extremity restrictions were not properly considered by the ALJ: (1) Dr. Brokaw's opinion; (2) Beth Fields' opinion; (3) Irma Davis' opinion; and (4) his former employer's opinion.  [Filing No. 16 at 10-12.]

Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review.  *Clifford*, 227 F.3d at 870; *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004).  In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).  An ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." [3]  SSR 06–03P, 2006 WL 2329939 (Aug. 9, 2006).

The Court will address each piece of evidence as it relates to Mr. Kirkling's argument regarding his upper extremity limitation determination.

---

[3] The SSA adopted new rules for agency review of disability claims for applications filed on or after March 27, 2017. 82 Fed. Reg. 5844-01.  The new regulations indicate that SSA "adjudicators will [now] articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an [acceptable medical source] . . . ." 82 Fed. Reg. 5844-01.  Because Mr. Kirkling applied for disability benefits before March 27, 2017, these changes will not apply to the review of his claim.

### 1. Dr. Brokaw

Mr. Kirkling contends that the ALJ improperly weighed medical opinion evidence. [Filing No. 16 at 10.] He claims that "the ALJ made no statements regarding the consistency of [treating physician] Dr. Brokaw's opinion" with that of the opinion of his nurse practitioner, Ms. Fields. [Filing No. 16 at 12.] Lastly, he argues that Dr. Brokaw's opinion was entitled to the greatest weight because of "an exceptionally long treating relationship." [Filing No. 16 at 12.]

In response, the Commissioner claims that the ALJ reasonably considered the medical opinion evidence and did make a "determination on the upper-extremities limitations." [Filing No. 21 at 6.] The Commissioner argues that the ALJ's assessment of Dr. Brokaw's opinion was proper as the ALJ considered the record evidence and "minimally articulated his reasons" for giving Dr. Brokaw's opinion little weight. [Filing No. 21 at 8-9.]

In reply, Mr. Kirkling argues that there is "ample evidence to support [his] severe limitations," including Dr. Brokaw's opinion who "opined no overhead reaching on the right with occasional overhead reaching on the left, occasional regular reaching bilaterally and no handling or fingering in February of 2013." [Filing No. 22 at 4.]

The ALJ provided an adequate discussion of his reasons for discounting Dr. Brokaw's opinion. If the ALJ finds that a treating source's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence, the ALJ need not give it controlling weight. 20 C.F.R. § 404.1527(c)(2); *Minnick v. Colvin*, 775 F.3d 929, 937-38 (7th Cir. 2015). While the ALJ did acknowledge Dr. Brokaw's specialty and the length of the treating relationship with Mr. Kirkling, [Filing No. 14-2 at 23], he still found that Dr. Brokaw's opinion was not consistent with the objective medical evidence in the record. Mr. Kirkling only provided a skeletal argument as to why Dr. Brokaw's

opinion should have been given controlling weight, and cited to no additional evidence that the ALJ failed to consider. The ALJ even recognized that the upper extremity determination in the RFC was similar to that of Dr. Brokaw's because both recognized that Mr. Kirkling "could lift up to 20 pounds." [Filing No. 14-2 at 23.] He went on to describe how Dr. Brokaw's opinion overall was inconsistent with the record as a whole. [Filing No. 14-2 at 23.] The ALJ gave a proper account of the evidence from the record and properly explained why he afforded Dr. Brokaw's opinion little weight.

### 2. Ms. Fields

Mr. Kirkling claims that the ALJ "gave little weight to the opinion of [his] primary treating provider, Beth Fields, NP, noting that she was not an acceptable medical source and citing evidence suggestive of engagement of a 'good amount of activities of daily living.'" [Filing No. 16 at 11.] Mr. Kirkling argues that the ALJ failed to note that Ms. Fields' opinion was "backed up by the signature of primary treating source Dr. Randy Stevens" and that "it was consistent with office records from two days prior." [Filing No. 16 at 11.]

In response, the Commissioner argues that Ms. Fields' opinion, while assessed by the ALJ in his decision, was not consistent with other substantial evidence, and that therefore it was permissible to discount it. [Filing No. 21 at 7.] Further, the Commissioner argues that Ms. Fields is not considered an acceptable medical source. [Filing No. 21 at 7-8.]

In reply, Mr. Kirkling argues that Ms. Fields is considered a treating source and that her opinion is consistent with her prior findings. [Filing No. 22 at 2-3.]

At the outset, the Court clarifies that Ms. Fields is not considered a "treating source" or "acceptable medical source," and her opinion is therefore not entitled to more weight pursuant 20 C.F.R. § 416.927(c). *See* 20 C.F.R. § 416.902 ("Treating source means your own physician,

psychologist, or other acceptable medical source . . . ."); 20 C.F.R. § 404.1513 (providing that acceptable medical sources include in part licensed physicians and licensed or certified psychologists). Moreover, while Ms. Fields' medical source statement was also signed by Dr. Stevens, nothing in the record demonstrates that he was Mr. Kirkling's treating physician, and Mr. Kirkling cites to no authority that indicates Ms. Fields' opinion is entitled to greater weight. *See, e.g.*, *Cooper v. Astrue,* 2007 WL 2904069, at *3 (S.D. Ind. 2007) (rejecting claimant's assertion to treat a nurse practitioner's opinion that was countersigned by a supervising physician as a treating source opinion where there was no evidence the physician saw the claimant or consulted with the nurse practitioner about the assessment). Here, the ALJ was required to evaluate Ms. Fields' opinion and consider the severity of the impairments and functional effects, which as noted below, the ALJ appropriately did. *See* SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006) (explaining that while nurse practitioners are not acceptable medical sources, their opinions should still be evaluated on impairment severity and functional effects).

A large portion of the evidence in the record that the ALJ analyzes focuses on Mr. Kirkling's symptoms and limitations with respect to his lower extremities and mental health because many of his impairments arise from those parts of his body. Contrary to Mr. Kirkling's arguments, however, the ALJ does consider evidence regarding the use of his upper extremities. With respect to Ms. Fields' opinion, the ALJ thoroughly discussed her findings regarding how much Mr. Kirkling can lift and carry, how much he can push/pull, and what his manipulative limitations are. [Filing No. 14-2 at 22.] The ALJ afforded Ms. Fields' opinion little weight overall, and explained that her findings were not supported by either Mr. Kirkling's activities of daily living or the updated diagnostic scans, which demonstrate mild to moderate findings of his extremities. The ALJ also indicated that Mr. Kirkling's manipulative limitations, including his

"grip strength and ability to finger, feel, and handle[,] were not consistently noted as deficient in the medical record." [Filing No. 14-2 at 22.] These reasons are sufficient to support why the ALJ gave little weight to Ms. Fields' opinion.

In addition, Mr. Kirkling points to evidence that he claims the ALJ failed to note was consistent with Ms. Fields' opinion. First, he claims that the ALJ failed to consider Ms. Fields' treatment notes from February 15, 2015, which contain various complaints from Mr. Kirkling. [Filing No. 14-8 at 48.] The ALJ does address this piece of evidence earlier in the decision, particularly with respect to his lower extremities, and notes that those findings were inconsistent with "updated diagnostic testing in 2015." [*See* Filing No. 14-2 at 20.] Although the ALJ does not mention Ms. Fields' notes specifically related to Mr. Kirkling's pain in his shoulder, those complaints appear to be subjective symptoms that Mr. Kirkling relayed to Ms. Fields and, in any event, do not demonstrate that he is entitled to greater restrictions in his RFC analysis.

### 3. Ms. Davis

Mr. Kirkling claims that the ALJ "failed to cite supportive evidence," that should have been evaluated for consistency with the record "such as the April 25, 2013 statement of [his] long time treating therapist who noted [Mr. Kirkling] to be very intentional when setting down a drink or else he would miss the table . . . ." [Filing No. 16 at 11-12.] Additionally, Mr. Kirkling argues that Ms. Davis' opinion should be given greater weight because of the "sheer frequency of [his] treatment" with her. [Filing No. 16 at 11-12.]

In response, the Commissioner argues that Ms. Davis is not an acceptable medical source, and that there is no authority for awarding her opinion "greater weight" based on the number of visits Mr. Kirkling had with Ms. Davis. [Filing No. 21 at 7-8.]

In reply, Mr. Kirkling argues that Ms. Davis is a treating source, that her opinion should be entitled to greater weight, and that in his opening brief, he cited evidence in the record that he claims supports Ms. Davis' findings. [Filing No. 22 at 3.]

Following the same analysis as with a nurse practitioner, a therapist is not an "acceptable medical source." *See* 20 C.F.R. § 416.902. Therefore, Ms. Davis is not a "treating source" and the ALJ is not required to give her opinion greater weight. Even so, the ALJ did consider Ms. Davis' opinion as it relates to Mr. Kirkling's mental health. [*See* Filing No. 14-2 at 21; Filing No. 14-2 at 24.] Given that she is a mental health therapist, this is the area that is within her specialty. The ALJ properly weighed Ms. Davis' opinion and gave her opinion some weight because the reported limitations appeared to be taken directly from Mr. Kirkland's own reports or from the symptomology of others. The Court, in agreement with the Commissioner, finds that Mr. Kirkling provided no authority as to why Ms. Davis' opinion should be given greater weight based on the sheer frequency of his treatment with her.

### 4. *Mr. Kirkling's Employer*

Mr. Kirkling claims that the letter from Maggie Dryer, his former employer, was evidence of consistency with respect to Ms. Fields' opinion regarding Mr. Kirkling's upper extremity limitations. Specifically, he argues that the letter shows, "[his] inability to carry single glasses or trays of glasses without excessive spillage due to tremors and shaking in the arm and hand." [Filing No. 16 at 11-12.]

In response, the Commissioner argues that the observation of Ms. Dryer "was not a finding of work-related manipulative restrictions." [Filing No. 21 at 8.]

In reply, Mr. Kirkling reiterates his argument that Ms. Dryer had "observed [him] on a frequent basis, and . . . observed limitations with the hands which are consistent with the opined limitations of [Ms.] Fields . . . ."

The Court notes at the outset that Ms. Dryer's letter is not a medical opinion. Ms. Dryer wrote the letter in her capacity as Mr. Kirkling's manager. Even considering the content of the letter, Mr. Kirkling fails to explain how it would render him greater limitations in the RFC, or that a remand on this issue would provide a different result. *See, e.g.*, *Johnson v. Colvin*, 2015 WL 5032267, at *6 (S.D. Ind. 2015) ("Courts will not remand a claim to the Commissioner without a showing that it might lead to different result."). Accordingly, remand is not warranted.

### B. Credibility Determination

Mr. Kirkling claims that the ALJ's credibility determination is not supported by substantial evidence and the testimony he gave "in no way contradicts his credibility." [Filing No. 16 at 12-13.] He argues that the record contains the necessary evidence to show that his reports and complaints are "not inconsistent with the medical evidence of the record." [Filing No. 16 at 13.] Mr. Kirkling asserts that his attempt at employment in his family's restaurant and bar required "several accommodations." [Filing No. 16 at 13.] Further, he contends that his need for workplace accommodations was corroborated by the medical opinions of his three "treating sources . . . who all opined a more greatly reduced [RFC] than that determined by the ALJ." [Filing No. 16 at 13-14.]

In response, the Commissioner argues that the ALJ properly evaluated Mr. Kirkling's subjective symptoms. [Filing No. 21 at 10.] The Commissioner claims that the ALJ did not err when he did not accept as true all of Mr. Kirkling's statements regarding his limitations. [Filing No. 21 at 11.] Further, the Commissioner contends that the ALJ properly considered the evidence

regarding Mr. Kirkling's employment at his family's restaurant and his father's testimony that Mr. Kirkling's mother helped with his daily activities of living. [Filing No. 21 at 11-12.] Lastly, the Commissioner claims that the ALJ included in the RFC determination a "reduced range of sedentary work" while taking into consideration Mr. Kirkling's father's opinions. [Filing No. 21 at 12.]

Mr. Kirkling does not discuss this issue in his reply brief.

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft, 539 F.3d at 678*, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska, 454 F.3d at 738*. The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue, 597 F.3d 920, 922-23 (7th Cir. 2010)*, but when faced with evidence both supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart, 279 F.3d 441, 444 (7th Cir. 2002)*. In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska, 454 F.3d at 738*.

Here, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . ." [Filing No. 14-2 at 19.] The ALJ's decision considered the factors from SSR 96-7P[4] that must be considered "in addition to the objective medical evidence." *SSR 96-7P, 1996 WL 374186 (July 2, 1996)*. The ALJ went on to

---

[4] SSR 96-7P was superseded by SSR 16-3P with an effective date of March 28, 2016. The Court will still apply the factors under 96-7P (which is largely unchanged in SSR 16-3P) as this was the rule in effect on May 15, 2015, the date of the ALJ's decision.

thoroughly address the various inconsistencies between Mr. Kirkling's alleged symptoms and the objective medical evidence found in the record.  In discussing Mr. Kirkling's activities of daily living, the ALJ listed various activities that Mr. Kirkling was capable of doing, such as caring for his young son, cooking and cleaning, using a riding lawn mower, and driving a car.  [Filing No. 14-2 at 21.]  The ALJ, however, did not place more weight on his activities of daily living, but rather, took them into consideration among other evidence in the record.

In addition, SSR 96-7P requires the ALJ to consider, among other things, "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p, 1996 WL 374186 (July 2, 1996).  The ALJ considered Mr. Kirkling's reported use of pain medications to control his lower extremity pains and his reported use (or sporadic use) of leg braces and/or an ambulatory device.  [Filing No. 14-2 at 22.] Additionally, the ALJ pointed out that treatment notes from Mr. Kirkling's mental health therapist show that he had several medical appointments scheduled with a goal of getting disability to "become more financially independent."  [Filing No. 14-2 at 20 (citing Filing No. 14-9 at 10).]  He noted that Mr. Kirkling was not necessarily visiting the practitioners (specifically, the chiropractor) for worsening pain.  [Filing No. 14-2 at 20.]  Lastly, the ALJ considered and gave some weight to the non-medical opinion of Mr. Kirkling's father, David Kirkling.  [Filing No. 14-2 at 24.]  The ALJ noted that his father's "insight into the severity of claimant's impairment and how it affects the claimant's ability to function" was factored into the credibility determination.  [Filing No. 14-2 at 24.]

These considerations as well as others thoroughly discussed in the ALJ's decision support the conclusion that the ALJ's credibility determination is far from patently wrong.  *See Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (finding that the ALJ's credibility determination was not

patently wrong when the ALJ thoroughly analyzed the record and properly considered the claimant's subjective complaints, evidence undermining those complaints, and objective medical evidence).  Mr. Kirkling focuses only on some evidence that he claims contradicts the ALJ's credibility finding, but he ignores numerous other considerations cited in the decision that undermine his complaints of debilitating symptoms.  Accordingly, because the Court finds no error with the ALJ's credibility determination, remand on this issue is not warranted.

## IV.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent."  *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010).  "The Act does not contemplate degrees of disability or allow for an award based on partial disability."  *Id.*  (*citing Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985)).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful."  *Williams-Overstreet*, 364 F. App'x at 274.  Taken together, the Court can find no legal basis presented by Mr. Kirkling to reverse the ALJ's decision that he was not disabled during the relevant time period.  Therefore, the decision below is **AFFIRMED**.  Final judgment shall issue accordingly.

June 28, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**